The next matter on our calendar is Jamel Williams v. New York Hospital Medical Center of Queens. Mr. Williams, you go first. Good morning. Good morning. Fairly speaking, I'm here to speak on the matter of the plaintiffs, their decision to not want to proceed with the case and why I'm here for the appeal. New York Queens Hospital blatantly tried to cover up the means by which they used that adverse treatment on me during a job interview, which I had scheduled on the day, which was scheduled for me. Now during the course of all this here, my civil rights was violated in an obvious manner from which the defendants are trying to cover up in a conniving and deceitful way. They're trying to say that this is a fact of the matter, but I'm trying to really allude from such points. But that there was no sign in sheets that me going to the interview was just me only at the interview from 8.30 in the morning to 2.30. I was the only one present. They used adverse treatment on me to cover up the situation. They blatantly had their employees subject me to harsh treatment and separate me from the rest of my supposedly being colleagues. There was a room full of like ten other people to be interviewed at the hospital. But yet they blatantly covered their tracks by dismissing each and every one of them and leaving me in the room. And then they called undercover police in to search me and harass me. They had receptionist there at the job interview who was cooperating with them. I went in for an interview, it was a two part interview. The first part of the interview I was in the room with Ms. Margaret Moore. She came to get me from the waiting room. When I finished the first part, I came out to wait for my second part. There was like nine people in there. Ms. Margaret Moore seen everybody. And when I got into the second part, there was this young lady, a Korean lady, who said that her phone was missing. Now mind you, when I came out of the second, out of the interview, she was talking about her phone was missing. I wasn't even in the area. She blatantly pointed to me because I was the only African American in the room. Now speaking with conviction at this here moment, I sensed the matter was a real high attention situation so I just cooperated because I thought it was a joke, a ploy. Maybe not a joke, a ploy to see how trustworthy I was or part of the job interview. So I was subject to that there. The security officers blatantly harassed me, talk about what you're doing, where's the phone at. I never had a phone, never left the office. I got three tickets on my card that day. The hospital called undercover police on me while I was on a job interview. Now fairly speaking, I woke up that morning to be productive and go towards a job interview for me, myself, and my daughter. I'm a single parent. Mr. Williams. Yes, ma'am. I was impressed that you were treated badly, as from what I know about this, the papers in front of me. But that doesn't necessarily give you a right to prevail over the Queen's Hospital. Okay, now, the matters at hand are, they may be a bit egregious due to substantial evidence or matters at hand to be discussed. That's why I ask that this court allow me to have a full trial, so I can have- What's the hospital's role in the- What was the hospital's role? In the incident. The hospital role was disrespectful in covering up the matter. They're issuing statements and appeals from the whole staff, saying that, maybe not statements, but saying that I was the only person in the hospital for a job interview. They called police on me, and then the lady who supposedly misplaced her phone or lost her phone. If I couldn't finish my interview, my second part interview, why was she allowed to continue her job process? I think that was blatant disrespect and like an adverse treatment, meaning the hospital used blatant measures to differentiate me from everybody else as an individual. They set me apart from everybody else. The hospital had the security guards harass me, the security guards was calling me out of my name. The security guards was disrespecting me, the hospital staff, including Mrs. Margaret Moore, because to speak on record, it's been said, Martin Luther King, to those- It seems to me like your real problem was with the woman who identified you as having stolen the phone. She never even, this lady never even identified me as stealing the phone. It was an assumption of hers, yet the hospital- It was an assumption, but she wasn't working for the hospital. She was an employee at the time finishing up her interview, finishing up her part. She was going to be a doctor or something like that, a medical staff. Now, my position may not have been as substantial as hers, as saving lives, but I was still going to be a part of the working staff. It's been said that if you see injustice done anywhere, to sit back and not be a speaker of it to uphold justice where it's been unjust, then you're part of the atrocity itself. I was- Mr. Williams, you've used up your time, but you have reserved one minute for rebuttal. So have a seat. We'll hear from the hospital, and then I'll call you back to the podium. Counsel. Morning, your honors. May it please the court. My name is Tony Delgarian, and I represent Defendant Appel Lee, New York Presbytery in Queens, formerly known as the New York Hospital Medical Center of Queens. In short, your honors, this case has nothing to do with the conduct of the hospital as- They did give him the bums brush out of there, didn't they? No, your honor. It was the, as, it was the New York Police Department, if anybody, that took- Who called the police? It's not clear in the complaint, quite frankly, your honor, but even assuming- The hospital called the police, didn't they? They did, yes, your honor. You can't put off that they were guiltless in this whole situation. Well, even if that's true, your honor, there is no facts in the amended complaint or anywhere in the record that remotely suggests that this had anything to do whatsoever with the appellant's race or color, and that's the central question here. What, I'm trying to understand more precisely what the facts are here, and I think where I am right now is that somebody complained about the loss of the phone and assumed that it was the plaintiff. And then from that information, that was reported to the hospital staff, and the hospital staff then called the police. So the false assumption, if the complaint is to be read that way, was on the part of the individual. The hospital was responding to her complaint that the plaintiff had taken the phone, or believed that the plaintiff had taken the phone, is that accurate? That's correct. And then they called the police, and the police, it seems, from the complaint, abused the plaintiff when they got there. And your position is that that's what the police did, it wasn't the hospital's doing. Right, exactly, your honor. These allegations that the hospital was somehow involved with the harassment or the questioning, none of those are in the amended complaint, your honor. Those appear for the first time on the brief, on appeal, that the appellant put together. Of course, Mr. Williams is pro se, so we're going to give him some leeway in the quality of his pleadings. That's fair, your honor. That being said, that doesn't excuse him from leaving certain facts out of the amended complaint. And again, even if this court were to consider those facts as part of the amended complaint, as I mentioned before, none of them reflect race-based animus on behalf of anybody at the hospital. There's no allegation that there were comments made because of the appellant's race or color. There are no facts to suggest that there was any animus or Again, the appellant claims that there is a cover up, but this is a cover up for what, your honor? There's no facts to support what this cover up was about. Is there any evidence in the record, I seem to remember that there's some evidence in the record about the person, the people who did qualify for the job that the plaintiff was seeking. In terms of their race. Yes, your honor, I'm glad you raised that, Judge Walker. So there is evidence to suggest that demonstrates that the two individuals that were hired for the position for which the appellant was applying for are African American males, just like the appellant. Now, that wouldn't have been in the complaint. I'm just curious to know procedurally how that came up. Sure, that was actually in the decision issued by the New York State Division of Human Rights, which was in fact attached to the complaint, to the amended complaint, your honor. And that was on page- That was attached. Right, that was on page 28 of the special appendix. At its core, your honors, the appellant's allegations here, they amount to nothing more than the false syllogism that would justify dismissal of this complaint. Which is that, number one, the appellant is part of a protected class. Number two, something bad happened to him. And number three, that something bad happened to him because he is in his protected class. As this court and many other courts in this circuit have repeatedly held, that is insufficient at the pleading stage to sustain a Title VII claim. And unless the court has any further questions, I see my time is almost up. The appellee is content to rely on its brief and the record here. Thank you, counsel. Thank you, your honor. Mr. Williams, you have one minute to respond to anything. I would like the court not to be misled by the defendant's misrepresentation of bad people representing a hospital who is totally racist. And I'm not here to race beat anybody. I'm here for justice and I'm here for people who go through the situation. I know the civil rights was in 1965, this is 2017, and dynamics have changed. Now, yes, I am part of a protected class. I was the only African American in the building the whole day. I was the only African American in the waiting room. I was the only African American who signed in. I couldn't even come in here without signing the log sheet to say that I'm here. So how is it that the hospital is not covering up the log sheet when you come with the receptionist? When the police was called in by the hospital, I was harassed by the hospital security and staff prior to the police coming in, okay? They questioned everybody in the waiting room, but showed specific attention to me. Now, I'm speaking with conviction, not upset. I was the only African American in the whole building from 8.30 to 2.30 in the afternoon. I left my car there. I got three tickets. And there's videotapes and there's proof of this. If you give me the opportunity to present my case with an unprejudiced jury, I can proceed with proper evidence with witnesses who was in the waiting room. I could proceed with proof that people have to sign the log sheet. I could proceed with proof, however the matter is. But I'm here today to get it clear that my case should not be dismissed. My case is very relevant to the cause at hand, because I'm here to not raise a ban. I'm here to help bring the conversation and to bring a resolve for matters of discrimination as a whole. It's not just about me. It's about the unfair treatment and bias of people who come collectively together and have the weight and the power to diminish anyone's opinion and outlook. I went for a job, there's no way, it's unsuitable and unrealistic to go to a job interview and to want to do something vehemently wrong with somebody else. I was going here to pursue a perspective employment opportunity so I could provide for my family. I'd like to close with this. I'd like to say the pledge, because this is speaking to all of us as Americans. I pledge allegiance to the flag of the United States of America. The republic for which it stands, one nation, under God, with liberty and justice for all. The hospital that liberally stripped me of my liberties and violated me. Thank you, Mr. Williams. Thank you both. We'll reserve decision.